1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

JUDY GEORGE, *et al.*,

                              Plaintiffs,

        v.

GROSSMONT CUYAMACA
COMMUNITY COLLEGE DISTRICT
BOARD OF GOVERNORS, *et al.*,

                              Defendants.

Case No. 22-cv-0424-BAS-DDL

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS (ECF No. 76)**

        This action is one of over approximately 1,000 challenges brought nationwide to strike down COVID-19 vaccine mandates.[1]  Like many of these suits, the instant one seeks to invalidate a State-issued workplace vaccination requirement.  Overwhelmingly, these suits have been unsuccessful.  *See*, *e.g.*, *Does 1–3 v. Mills*, 142 S. Ct. 1112 (2021) (denying certiorari to the United States Court of Appeals for the First Circuit in a case in which the First Circuit rejected a Free Exercise challenge to a Maine mandate requiring its healthcare workers be vaccinated against COVID-19 as a condition of employment); *Dr. A v. Hochul*,

---

[1] Jackson Lewis P.C., *Challenges Against Employer COVID-19 Vaccine Mandates Show No Sign of Slowing*, Nat. L. Rev. Vol. XII No. 321 (Sept. 19, 2022), *available at* https://www.natlawreview.com/article/challenges-against-employer-covid-19-vaccine-mandates-show-no-sign-slowing (last accessed Nov. 17, 2022)

- 1 -

142 S. Ct. 2569 (2022) (similar); *see also Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) (affirming dismissal of a Free Exercise challenge to school district's COVID-19 vaccine mandate without a sincerely-held religious belief exemption).

Here, the independent and separate governing boards of three California Community College Districts ("CCDs")—San Diego CCD ("SDCCD"), South Orange County CCD ("SOCCCD"), and Grossmont Cuyamaca CCD ("GCCCD")—all resolved to authorize their respective chancellors to institute compulsory vaccination against COVID-19 for employees and students.  By November 2021, each CCD had adopted substantially similar protocols concerning vaccination:  CCD employees and students were required to be either fully vaccinated and boosted against COVID-19 or establish eligibility for a medical or religious exemption by a date certain.  Employees and students who qualified for an exemption partook in an interactive process with their institutions to determine whether a reasonable accommodation could be made without posing a health and safety risk to others.

Plaintiffs are employees and one student at the three CCDs who allege they possess sincerely-held religious beliefs that prevent them from getting vaccinated against COVID-19.  All seven Plaintiffs are exempted from their respective CCDs' vaccine mandate. Accommodations for Plaintiffs' exemptions varied:  some Plaintiffs were permitted to continue to access campus, subject to their compliance with testing and/or masking requirements; some were required to work and study remotely (and in some instances also comply with testing requirements); and some were instructed to take paid and/or unpaid leave.

By this action, Plaintiffs seek to invalidate on a myriad of constitutional grounds, and under Title VII of the Civil Rights Act of 1964, each of the CCD's COVID-19 mitigation policies requiring compulsory vaccination, masking, and testing.  They name as Defendants over thirty individual and institutional Defendants associated with all three CCDs, as well as the CCDs themselves.

Now before the Court is Defendants' motion to dismiss.  (Mot. to Dismiss ("MTD"), ECF No. 76; *see* Mem. in Supp. of MTD ("Mem."), ECF No. 76-1.)  The Motion to Dismiss

22cv0424

challenges *both* this Court's subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) *and* the sufficiency of the claims under Rule 12(b)(6). Plaintiffs oppose (Opp'n, ECF No. 80), and Defendants reply (Reply, ECF No. 81). This Court held oral argument on November 2, 2022. (ECF No. 83.) For the reasons stated below, the Court **GRANTS** Defendants' Motion to Dismiss as to all claims brought by all Plaintiffs. Dismissal shall be **WITH PREJUDICE** as to Count VIII, all Counts against the Student Defendants, and Counts I through VI against the Entity Defendants. The Court **GRANTS** Plaintiffs leave to amend their remaining claims against the remaining Defendants.

## I.   BACKGROUND[2]

### A.   COVID-19 and the Vaccines

The novel coronavirus 2019 (referred to above as "COVID-19") is a highly contagious virus that spreads from person to person, mainly through respiratory droplets produced when an infected person—even an asymptomatic one—speaks, coughs, or sneezes. *Brach v. Newsom*, 6 F.4th 905, 934 (9th Cir. 2021) (Hurwitz, J., dissenting). People with COVID-19 have reported a wide range of symptoms, with many suffering hospitalization and/or long-term health complications, including death. *Id.* Approximately

---

[2] The Court presumes the parties' familiarity with the facts from the Order, dated November 4, 2022, denying Plaintiffs' motion for a preliminary injunction. (Preliminary Injunction ("P.I.") Denial, ECF No. 84.) The Court repeats the facts set forth in the Background section of the P.I. Denial only to the extent necessary to frame the issues pertinent to the pending Motion.

The facts stated here principally are taken from the Complaint, its exhibits, and documents incorporated by reference thereto. They are also taken from the CCD policy documents to which the Complaint refers extensively but fails to attach, namely documents that delineate certain of the CCDs' resolutions and vaccine mandates. Indeed, while Plaintiffs attached some of the relevant policy documents to their Complaint, they failed to annex others without explanation. Defendants annexed the missing policy documents to their opposition to Plaintiffs' application for a temporary restraining order. (ECF No. 68-1–68-3). The Court construes these documents as part of the pleading. *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (holding courts may consider on a motion pursuant to Federal Rule of Civil Procedure 12(b)(6) extrinsic documents if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the [document proffered]"); *accord Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994).

For the pending Motion to Dismiss, the Court accepts all of Plaintiffs' factual allegations as true. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

22cv0424

one million Americans—and six million worldwide—have perished from COVID-19 infection and related complications. *UnifySCC v. Cody*, No. 22-cv-01019-BLF, 2022 WL 2357068, at *1 (N.D. Cal. June 30, 2022).

COVID-19 first reached the United States in winter of 2021; not long after, "infections began popping up across the country." *S. Bay United Pentecostal Church v. Newsom*, 985 F.3d 1128, 1132 (9th Cir. 2021). Due to its highly contagious nature, its propensity to inflict dire health consequences, and its risk of overwhelming hospitals, the virus brought "ordinary life . . . to a grinding halt." *Id.* California institutions of higher learning—including the three CCDs in this case—were not spared. For the period covering the Spring 2020 academic semester and for part of the 2020–21 academic year, the CCDs closed their doors and transitioned to online and remote services and learning to prevent infection and disease among their employees and students. (*See*, *e.g.*, SDCCD Resolution (noting SDCCD "provided instruction and services primarily through distance education and remote operations" for the Spring 2020 academic semester and the 2020–21 academic year), Ex. D to Compl.)[3] During this period, there was no widely available or effective pharmaceutical tool for preventing and treating COVID-19. *Brach*, 6 F.4th at 934. But since then, not only has science enabled us to better understand the virus but also it has delivered a new weapon to combat it: widely available vaccines. (Compl. ¶ 69 (listing the three COVID-19 vaccines and delineating the timeline of the vaccines' development and authorization for use).)

## B.     The CCDs' Vaccine Requirements

At the beginning of the 2021-22 CCD academic year, each CCD governing board resolved to confer its respective Chancellor with authority to develop and adopt a policy requiring compulsory vaccination for its employees and students. (Compl. ¶¶ 58, 61–62; *see also* SDCCD Resolution; GCCCD Resolution, Ex. J to Compl.; SOCCCD Resolution,

---

[3] All exhibits to the Complaint are annexed at ECF No. 1.

Ex. 1 to Declaration of Cindy Vyskocil, ECF No. 68-3.)[4]  SDCCD instituted its policy on September 23, 2021, GCCCD on November 9, 2021, and SOCCCD on November 17, 2021.  (Compl. ¶¶ 155–57.)  While each CCD's policy is separate and independent, Plaintiffs do not claim there exists between the CCDs' policies any distinction of a constitutional dimension, and even refer to the policies as a singular and uniform policy throughout their Complaint and briefing.  (*See*, *e.g.*, Compl. ¶ 232; Opp'n at 3:19–4:3.)  Accordingly, the Court analyzes the policies singularly in the interests of judicial economy and streamlining the allegations in the Complaint.

Moreover, the Court notes that, as precedent has evolved throughout the pandemic, it has become increasingly clear that where it is claimed a compulsory vaccination policy that employs exemptions and accommodations derogates rights secured by the Free Exercise Clause, the policy's component parts—(1) the vaccine mandate and (2) the mechanism for granting accommodations—*both* must pass constitutional muster.  *UnifySCC*, 2022 WL 2357068, at *5 (collecting authorities) (observing "separately analyzing" the mandate and accommodation frameworks of COVID-19 vaccination policies "aligns with multiple circuit and district courts['] [approach]").  Considering the Plaintiffs' belief expressed at oral argument that this action principally sounds in religious freedom, this Court is persuaded to adhere to this methodical approach.

Accordingly, although the parties do not do so themselves, to properly analyze Plaintiffs' free exercise claim this Court separates below the CCDs' vaccination policies into their component parts:  their vaccine mandates ("Mandates") and their accommodation frameworks ("Accommodation Frameworks," together with the Mandates, the "CCDs' Vaccine Requirements").

---

[4] Although the GCCCD Resolution is not appended to the Complaint, the Court nevertheless may consider it at the pleading stage because the Complaint's allegations refer extensively to that document, it is central to Plaintiffs' underlying claims, and Plaintiffs have not contested its veracity despite having ample opportunity to have done so.  *See Lopez*, 450 F.3d 445 at 448.

### 1. Mandates

Under the Mandates, by a date certain, all CCD employees and students must either be fully vaccinated and boosted against COVID-19 or establish entitlement to an eligible exemption. (SDCCD Vaccine Requirement; SOCCCD Vaccine Requirement, Ex. 2 to Vyskocil Decl.; GCCCD Vaccine Requirement, Ex. A to Declaration of Aimee Gallagher, ECF No. 68-1.)[5] Each CCD grounds its Mandate in guidance and data from the Centers for Disease Control ("CDC")—as well as other federal, state, and local health agencies and organizations—identifying "vaccination against COVID-19 by as many people as possible a[] necessary measure to control and contain serious illness, hospitalization, and loss of life due to COVID-19." (SDCCD Resolution at 1; GCCCD Resolution at 1; *see also* SOCCCD Vaccine Requirement at 1.)

The Mandates all recognize the same two exemptions: (1) a medical-condition exemption and (2) a sincerely-held religious belief exemption. (SDCCD Vaccine Requirement; SOCCCD Vaccine Requirement; GCCCD Vaccine Requirement; *accord* Compl. ¶¶ 59, 62, 77–78.) The Complaint and its attachments reflect that all three institutions required employees and students seeking a sincerely-held religious belief exemption to complete and submit a vaccination exemption form, from which the CCDs' respective Human Resources Departments would determine whether to grant such an exemption. (*See*, *e.g.*, GCCCD Vaccination Exemption Form, Ex. J to Compl.; SDCCD Vaccination Exemption Form, Ex. V to Compl.; SOCCCD Vaccination Exemption Form, Ex. DD to Compl.) In different terms, the CCDs' Vaccine Requirements warn employees that failure to comply with the Mandates would result in discipline. For example, SOCCCD's Vaccine Requirement warns failure to comply by the end of the 2021-22 school year would result in termination of employment. (SOCCCD Vaccine Requirement

---

[5] Although the SOCCCD and GCCCD Vaccine Requirements are not appended to the Complaint, the Court nevertheless may consider them at the pleading stage because the Complaint's allegations refer extensively to that document, it is central to Plaintiffs' underlying claims, and Plaintiffs have not contested its veracity despite having ample opportunity to do so. *See Lopez*, 450 F.3d 445 at 448.

§ IV.10.)  By contrast, SDCCD and GCCCD's Vaccine Requirements state, "Employees who do not submit their vaccination documentation [or] are not approved for an exemption will be subject to discipline."  (SDCCD Vaccine Requirement at 3; GCCCD Vaccine Requirement at 3.)

### 2.    Accommodation Frameworks

Those who successfully established eligibility for one of the two exemptions partook in an "interactive accommodation process" pursuant to which the CCDs "determine[d] whether a reasonable accommodation . . . could be made without posing a health and safety risk to others."  (SDCCD Vaccine Requirement at 2; GCCCD Vaccine Requirement at 2; *see also* SOCCCD Vaccine Requirement § II.3.)

The SDCCD and GCCCD Accommodation Frameworks are identical:   those institutions evaluate accommodations on an individual basis within the specific reasons for an exemption, type of work performed, environment in which work is performed, and related relevant factors."   (SDCCD Vaccine Requirement at 2; GCCCD Vaccine Requirement at 2.)   "[R]easonable accommodations" under the GCCCD and SDCCD Accommodation Frameworks include "periodic COVID-19 testing, changes in work assignments, changes in work schedules, changes in work location, and other appropriate measures."  (SDCCD Vaccine Requirement at 2; GCCCD Vaccine Requirement at 2.)  The SDCCD Accommodation Framework requires *all* exemptees to submit to weekly antigen testing, regardless of whether their accommodation permits them to access campus, and regardless of whether they are experiencing symptoms consistent with a COVID-19 infection.  (Compl. ¶ 55; SDCCD Testing Requirement, Ex. B to Compl.)[6]

In contrast to SDCCD and GCCCD, SOCCCD does not disclose how its Accommodation Framework operates; its Vaccine Requirement does not list any pertinent

---

[6] In sworn declarations, SDCCD attested that periodic COVID-19 testing is no longer required under the institution's Accommodation Framework.  (Declaration of Gregory Smith ¶ 5 ("Smith Decl."), ECF No. 68-1.)  This was confirmed at oral argument.  GCCCD also represented at oral argument it will eliminate its entire Vaccine Requirement by the end of this year.  However, these facts are not part of the pleadings and, thus, are not relevant to the Rule 12(b)(6) analysis of the Motion.

22cv0424

factor considered for determining what sort of accommodation to administer to an exempt employee.   However, the SOCCCD Accommodation Framework's accommodations roughly approximate those offered by GCCCD and SDCCD.   This includes: "physical/social distancing, avoiding large gatherings; wearing acceptable facial coverings and/or other personal protective equipment; frequent handwashing and cleaning; practicing respiratory etiquette; and/or exclusion from the physical worksite when warranted." (SOCCCD Vaccine Requirement § II.3.)   Moreover, like SDCCD, SOCCCD requires exemptees to submit to weekly antigen testing; SOCCCD's Vaccine Requirement provides that failure to abide by the asymptomatic testing requirement results in adverse employment action for employees, including termination in the event of two missed tests. (*Id.* § I.8.)[7]

### C.   Plaintiffs

Plaintiffs in this lawsuit are six CCD employees and one CCD student.   (Compl. ¶¶ 4–10.)   The CCDs approved all Plaintiffs' requests for sincerely-held religious belief exemptions. (*Id.* ¶¶ 79, 87, 92, 105, 118, 128, 136.)  However, the accommodations granted to each Plaintiff differed.

<u>Carlos de la Lama ("Lama")</u>:   Lama is a SDCCD employee who works in the Mathematics department.  (Compl. ¶ 6.)  SDCCD approved Lama's request for a sincerely-held religious belief exemption on October 28, 2021.   (*Id.* ¶ 92; *see* Lama Exemption Determination, Ex. Q to Compl.)     Due to his unvaccinated status, SDCCD restricted Lama's presence on campus for the Spring 2022 semester but accommodated his religious exemption by allowing him to perform all his duties remotely for the semester, subject to the requirement he test for COVID-19 weekly—whether symptomatic or not.  (Lama

---

[7] At oral argument, SOCCCD represented that while its Mandate would remain in place, compulsory masking and testing were removed from the Accommodation Framework on August 29 and October 3, 2022, respectively.

Accommodation Determination, Ex. T to Compl.)   Lama accepted his accommodation. (Compl. ¶ 95.)[8]

Dora Meza ("Meza"):  Meza is a SDCCD employee who serves as a Student Services Supervisor I.  (Compl. ¶ 7.)   SDCCD approved Meza's request for a sincerely-held religious belief exemption on November 5, 2021.  (Id. ¶¶ 103–05; Meza Exemption Determination, Ex. Z to Compl.)   On February 7, 2022, SDCCD determined it could accommodate Meza's religious exemption by permitting her to continue working onsite, provided she, inter alia, wear a face-covering at all times and test for COVID-19 weekly— whether symptomatic or not.  (Meza Accommodation Determination, Ex. BB to Compl.) Meza accepted her accommodation.  (Id.)[9]

Mary Kate Planeta:  Planeta is a SDCCD student.  (Compl. ¶ 10.)  SDCCD approved her request for a sincerely-held religious belief exemption in the fall of 2021, thereby enabling her to attend class in person pursuant to SDCCD policy.  (Id. ¶¶ 136–37; Planeta's Exemption Determination, Ex. NN to Compl.)   However, she alleges that SDCCD instituted a policy for the Spring 2022 semester that restricted all unvaccinated students— including those, like her, with exemptions—from attending in-person courses.[10]  (Id. ¶ 139.)  Accordingly, Planeta alleges that she was "dropped" from several in-person classes in which she had enrolled and that were "requirement[s] [for her] to be able to transfer to another school and to enroll in the Coast Guard."  (Id. ¶¶ 138–39.)[11]

---

[8] As mentioned at supra note 5, SDCCD no longer employs testing requirements.  However, as set forth in supra note 6, SDCCD represented at oral argument Lama may face discipline if he does not get vaccinated by the Spring 2023 semester, including adverse employment action up to termination.

[9] As mentioned at supra note 5, SDCCD no longer employs testing requirements.  However, as set forth in supra note 6, SDCCD represented at oral argument Meza may face discipline if she does not get vaccinated by the Spring 2023 semester, including adverse employment action up to termination.

[10] Planeta also claims she was denied entrance into SDCCD's Emergency Medical Technician ("EMT") program due to her unvaccinated status, despite her exemption.  (See Compl., Ex. NN.) However, the EMT program's vaccine requirement is not borne from the SDCCD Vaccine Requirement challenged in this action; that policy is silent as to the medical requirements of the institution's EMT program.

[11] As mentioned at supra note 6, SDCCD attests, and represented at oral argument, Planeta no longer is subject to SDCCD's Vaccine Requirement and that there is no longer any restriction on exempt students attending in-person courses.

Jess Perez ("Perez"):  Perez is a SOCCCD employee who works as a Senior Administrative Assistant.  (Compl. ¶ 8.)  SOCCCD approved Perez's request for a sincerely-held religious belief exemption on December 8, 2021.[12]  (*Id*. ¶¶ 117–18; Perez Accommodation Determination, Ex. FF to Compl.)  That same day, SOCCCD granted Perez's request for an accommodation to continue working onsite despite his unvaccinated status, subject to the requirement that he test for COVID-19 twice weekly—whether symptomatic or not.  (Perez Exemption Determination.)  Perez accepted the terms of his accommodation.  (Compl. ¶¶ 122–23.)[13]

Paul Bonkowski ("Bonkowski"):  Bonkowski is a SOCCCD employee who works as the Lead Maintenance Worker in the Facilities, Maintenance & Operations department.  (Compl. ¶ 9.)  SOCCCD approved Bonkowski's request for a sincerely-held religious belief exemption on November 17, 2021.  (*Id*. ¶ 127; Bonkowski Exemption Determination, Ex. JJ to Compl.)  That same day, SOCCCD granted Bonkowski's request for an accommodation to continue working onsite despite his unvaccinated status, subject to the requirement that he test for COVID-19 twice weekly—whether symptomatic or not.  (Bonkowski Exemption Determination.)[14]  Bonkowski accepted the terms of his accommodation.  (Compl. ¶¶ 133–34.)

Patricia Sparks ("Sparks"):  Sparks is a GCCCD employee who serves as an Administrative Assistant IV.  (Compl. ¶ 7.)  GCCCD approved Sparks' request for a sincerely-held religious belief exemption on January 21, 2022.  (*Id*. ¶ 87; Sparks Exemption Determination, Ex. N to Compl.)  On January 21, 2022, GCCCD determined that, because "the essential functions of her position required her physical presence at a front desk location . . .[,] remote work was not a reasonable accommodation."  (Sparks

---

[12] SOCCCD also granted Perez's request for a medical-condition exemption to the institution's Mandate.  (Compl. ¶ 117.)

[13] At oral argument, SOCCCD proffered, and Perez—who attended the hearing—admitted, that Perez had resigned on October 31, 2022.

[14] As mentioned at *supra* note 6, GCCD represented, and Plaintiffs confirmed, at oral argument Bonkowski no longer is subject to testing requirements.

Exemption Determination.)  However, GCCCD informed Sparks that, "while remote work was not a reasonable accommodation, the use of her accrued paid or unpaid leave through June 30, 2022 as an accommodation was approved."  (*Id.*)  Sparks accepted the terms of her accommodation.  (Compl. ¶¶ 87–88.)[15]

### D.    This Lawsuit

#### 1.    The Complaint

On March 30, 2022, Plaintiffs commenced the instant action.  (Compl.)  The Complaint names as Defendants over thirty individuals and entities associated with the CCDs.  In addition to high-ranking CCD employees and elected members of the CCDs' governing boards, the individual Defendants include former student members of the CCDs' governing boards (referred to above as "Student Defendants").[16]  The remaining Defendants consist of each of the three CCD governing boards, as well as the CCDs themselves (referred to above as "Entity Defendants").  (*Id.* ¶¶ 11, 13, 22, 24. 34, 36.)

The Complaint principally contains a 166-paragraph long "Statement of Facts" section (Compl. ¶¶ 52–218), followed by a section delineating Plaintiffs' eight causes of action (*id.* ¶¶ 219–322).  Plaintiffs claim that each CCD Vaccine Requirement violates: (1) the Equal Protection Clause of the Fourteenth Amendment ("Count I"); (2) substantive due process under the Fifth Amendment ("Count II"); (3) the right to bodily integrity under the Fifth Amendment ("Count III"); (4) the Free Exercise Clause of the First Amendment ("Count IV"); (5) the right to privacy under the Fifth Amendment ("Count V"); (6) the right against unreasonable search and seizure under the Fourth Amendment ("Count VI"); (7) Title VII of the Civil Rights Act of 1964 ("Count VII"); and (8) 42 U.S.C. § 1983 ("Count VIII").  (*Id.* ¶¶ 219–322.)  Each Plaintiff asserts claims against all 37 Defendants,

---

[15] At oral argument, GCCCD represented, and Plaintiffs confirmed, Sparks had been permitted to return to work, which she did on July 5, 2022.  And although GCCCD conditioned Sparks' return upon the requirement she mask while on campus, as mentioned above, *see supra* note 7, GCCCD lifted its masking requirements earlier this year.

[16] The Student Defendants are Benjamin Blevins (GCCCD), Kristie Macogay (GCCCD), Natalia Trinh (SDCCD), Victoria Owusu (SDCCD), Edward Borek (SDCCD), and Setarra Martin (SOCCCD). (Compl. ¶¶ 19–20, 31–33, 45.)

regardless of whether the Defendant against whom the claim is directed is associated with the CCD at which a Plaintiff works or is enrolled.

For their constitutional claims (Counts I through VI), Plaintiffs seek a declaration that the CCDs' Vaccine Requirements are invalid and unlawful and an injunction restraining Defendants from continuing to implement the requirements.[17]   (Compl. ¶¶ 325–41.)  In addition to declaratory and injunctive relief, Plaintiffs also seek an award of costs, including reasonable attorneys' fees pursuant to their Title VII claim (Count VII). (*Id.* ¶ 344 (citing 42 U.S.C. § 2000e-5(k)).)

### 2.   Preliminary Injunction Denial

Approximately three months after filing the Complaint, on June 20, 2022, Plaintiffs contemporaneously served Defendants with the pleading (Certificates of Service, ECF Nos. 3–25; Waivers of Service, ECF Nos. 26–39) and moved for a temporary restraining order (TRO App., ECF No. 40).  Defendants moved to dismiss the Complaint while Plaintiffs' TRO Application was pending.  (Mot.)  This Court converted Plaintiffs' TRO Application into one for a preliminary injunction.  (ECF No. 82.)  It held oral argument on November 2, 2022, at which the parties addressed the merits of both Plaintiffs' request for pre-trial relief and the instant Motion.  (ECF No. 83.)

In a written order, this Court denied Plaintiffs' application for a preliminary injunction, finding Plaintiffs failed to establish any one of the four factors required under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), to warrant the issuance of such relief.  (P.I. Denial).  Specifically, this Court found Plaintiffs failed to demonstrate a likelihood of success on their equal protection or free exercise claims and, thus, failed to show they would suffer irreparable harm of constitutional dimension absent

---

[17] Plaintiffs appear to seek costs, including attorneys' fees, under a provision of California law in connection with Count I.  (Compl. ¶ 327 ("[T]he Court [should] grant Plaintiff costs and attorney's fees pursuant to Code of Civil Procedure section 1021.5 . . . .").)  Where, as here, a federal court is not sitting in diversity, a state provision that allows for awarding costs as part of a substantive, compensatory scheme, is not a basis for recovery.  *Cf. AF Holdings LLC v. Trinh*, No. C 12-02393 CRB, 2012 WL 12316067, at *1 (N.D. Cal. Nov. 9, 2012).

pre-trial relief. (P.I. Denial at 20–36.) This Court further found Plaintiffs' Title VII claim likely lacks merit and that the financial injuries tied to that claim do not qualify as irreparable. (*Id.* at 36–41.) Finally, this Court determined that Plaintiffs failed to demonstrate the public interest is served by suspension of the CCDs' Vaccine Requirements. (*Id.* at 41.)

### 3.    Motion to Dismiss

Defendants now move to dismiss the Complaint pursuant to both Rule 12(b)(1) and Rule 12(b)(6). With respect to their jurisdictional arguments under Rule 12(b)(1), Defendants aver:

- The Student Defendants should be dismissed as moot because they no longer serve as student-board members and because they merely cast advisory votes in favor of their respective institutions' Vaccine Requirements. (Mem. at 11:20–13:28.)

- Planeta and George's claims should be dismissed as moot because neither are subject to a CCD Vaccine Requirement. (*Id.* at 5:3–6:2, 10:18-22.)

- Counts I through VI against Entity Defendants are barred by the Eleventh Amendment's conferral of immunity to State bodies. (*Id.* at 15:15–16:17.)

In the strand of their Motion seeking Rule 12(b)(6) dismissal, Defendants argue:

- Counts I through V fail to state a claim because Plaintiffs' allegations fail to invoke heightened scrutiny, and the CCD Vaccine Requirements are rationally related to the State's legitimate governmental interest in stemming the curb of COVID-19. (Mem. at 16:20–19:19.)

- Count VI fails to state a claim because the CCDs' Vaccine Requirements do not effect a "seizure" within the meaning of the Fourth Amendment. (*Id.* at 23:12-25.)

- Count VII fails to state a claim because Plaintiffs fail to allege exhaustion of administrative remedies as a prerequisite element to their Title VII action. Alternatively, the Complaint fail to plausibly allege Title VII violation because Plaintiffs are exempt from the Mandates and have been administered reasonable accommodations for their religious objection to vaccination. (*Id.* at 23:28–24:27.)

- 13 -

- Count VIII fails to state a claim because it is brought pursuant to 42 U.S.C. § 1983, which does not form the basis of a cognizable, standalone cause of action. (*Id.* at 25:3-6.)

## II.   LEGAL STANDARD

### A.   Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim based upon the court's lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).

A jurisdictional attack under Rule 12(b)(1) can be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations in the complaint are insufficient to invoke federal jurisdiction, and the court is limited in its review to the allegations in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The Court assumes the truth of the allegations in the complaint. *Lee*, 227 F.3d at 1242. In a factual attack, the challenger provides evidence that an alleged fact in the complaint is false, thereby resulting in a lack of subject matter jurisdiction. *Meyer*, 373 F.3d at 1039. Therefore, under a factual attack, the allegations in the complaint are not presumed to be true and "the district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). However, "[a] court may not resolve genuinely disputed facts where 'the question of jurisdiction is

- 14 -

1    dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*,
2    812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine v. United States*, 704 F.2d 1074,
3    1077 (9th Cir. 1983)).

4    **B.    Federal Rule of Civil Procedure 12(b)(6)**

5        A Rule 12(b)(6) motion tests the legal sufficiency of the allegations underlying the
6    claims in a complaint. *Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  The procedural
7    posture on a Rule 12(b)(6) motion requires the court to accept all factual allegations
8    pleaded in the complaint as true and to construe those allegations, and draw all reasonable
9    inferences therefrom, in favor of plaintiff.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336,
10   337–38 (9th Cir. 1996).

11       To avoid Rule 12(b)(6) dismissal, a complaint must plead sufficient factual
12   allegations to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556
13   U.S. 662, 678 (2008) (internal quotation marks and citations omitted).  "A claim has facial
14   plausibility when the plaintiff pleads factual content that allows the court to draw the
15   reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "A Rule
16   12(b)(6) dismissal may be based on either a 'lack of cognizable legal theory' or 'the
17   absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside*
18   *Healthcare Sys. LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica*
19   *Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

20   **II.    ANALYSIS**

21   **A.    Student Defendants**

22       As an initial matter, the Court addresses the strand of Defendants' Motion seeking
23   dismissal with prejudice of all claims against Student Defendants. (Mem. at 11:20–13:28.)
24   Defendants assert that the Student Defendants' votes in favor of instituting the CCDs'
25   Vaccine Requirements were purely advisory—not binding—and, therefore, Plaintiffs
26   purported injury is not fairly traceable to any conduct of the Student Defendants.  Plaintiffs
27   do not oppose this portion of the Motion.  For that reason, the Court **DISMISSES WITH**
28   **PREJUDICE** all claims against Student Defendants.

**B.**   **Jurisdictional Analysis**

    **1.**   **Mootness Doctrine**

Defendants bring a factual challenge—entrenched in the mootness doctrine—to this Court's subject matter jurisdiction over Planeta and George's claims.  They assert those Plaintiffs' claims are moot because neither is subject to any challenged policy.

Article III of the Constitution restricts the exercise of the judicial powers to "actual, ongoing cases or controversies." *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990)) (internal quotation marks omitted).  Thus, "[t]o qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal quotation marks omitted).  A case or controversy becomes moot, and thus no longer suitable for adjudication, when the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome. *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

The focus of the mootness inquiry is whether the court can grant effective relief to a litigant seeking a favorable judicial decision. *See NASD Dispute Resolution, Inc. v. Judicial Council of Cal.*, 488 F.3d 1065, 1068 (9th Cir. 2007) (explaining the test for mootness is whether the court can grant a litigant any effective relief in the event it decides the matter on the merits in the litigant's favor); *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted.").  If a court's determination of an issue presented will not "admit[] of specific relief" or cannot otherwise affect the rights of the litigants in the case before it, then the court must dismiss the case due to lack of jurisdiction. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937); *see North Carolina v. Rice*, 404 U.S. 244, 246 (1971); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997) ("If an event occurs that

prevents the court from granting effective relief, the claim is moot and must be dismissed.").

The mootness doctrine thus ensures the federal courts properly restrict themselves to deciding cases and controversies capable of legal resolution, while avoiding improper declarations on abstract propositions of law. *See Hall v. Beals*, 396 U.S. 45, 48 (1969); *Spencer v. Kemna*, 523 U.S. 1, 18 (1998) ("[Federal courts] are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong.").

But the proscription of federal court jurisdiction under the mootness doctrine is not absolute. The Ninth Circuit recognizes "several major exceptions to mootness" that enable a court to retain jurisdiction over and consider the merits of a case that is technically moot, including for "voluntary cessation." *Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960, 964 (9th Cir. 2007).

Below, the Court assesses separately Defendants' mootness challenge to Planeta and George. It finds that while George's claims are moot and, thus, fall outside this Court's jurisdiction, Planeta's claims remain live pursuant to the "voluntary cessation" exception to the mootness doctrine.

### i.     Judy George

Defendants aver George's claims are moot because she voluntarily retired from her position at GCCCD and, thus, is no longer subject to GCCD's Vaccine Requirement. (Mem. at 10:18-27.) In support of this factual contention, Defendants proffer a declaration from Aimee Gallagher, GCCCD's Vice Chancellor of Human Resources, demonstrating George tendered her Notice of Retirement in February 2022, GCCCD's governing board accepted George's retirement in March 2022, and George's employment with GCCCD ended effective July 2022. (Gallagher Decl. ¶ 9; George's Notice of Retirement, Ex. B to Gallagher Decl.) Plaintiffs do not contest the veracity of Gallagher's attestations. Nor do Plaintiffs disagree that George's claims are moot to the extent she seeks injunctive and declaratory relief invalidating the GCCCD's Vaccine Requirement. Rather, Plaintiffs

argue the mootness doctrine does not apply because George is seeking "prospective relief, specifically, reinstatement of her employment [after] she was [allegedly] forced to retire" due to GCCCD's Vaccine Requirement. (Opp'n at 7:6-13.) Hence, according to Plaintiffs, George's dispute with GCCCD remains a live one because the Court still can grant George effective relief despite her retirement: reinstatement.

Plaintiffs' argument is fundamentally flawed because it seeks to manufacture a live dispute out of thin air. George's underlying action does not seek reinstatement. She—like all Plaintiffs—only seeks equitable relief in the form of a declaration deeming the CCDs' Vaccine Requirements unlawful and an injunction restraining the CCDs' Vaccine Requirements. (Compl. ¶¶ 324–49.) Issuing George this form of relief would be pointless given her retirement. *Horizon Bank & Trust*, 391 F.3d at 53.

And while reinstatement is among the remedies generally available under Title VII, *see Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 851–52 (2001), the Complaint is completely devoid of any facts that invoke reinstatement as possible relief for George, *see, e.g., Taylor v. F.D.I.C.*, 132 F.3d 753, 767 (D.C.C. 1997) ("[P]laintiffs' request for reinstatement fails as a result of their voluntary resignation."); *Locks v. Lew*, 200 F. Supp. 3d 254, 269 (D.D.C. 2016) (holding "voluntary retirement precludes [plaintiff] from requested remedy of reinstatement" under Title VII). George alleges GCCCD granted her an exemption to its Mandate, thereby relinquishing her from the requirement she be fully vaccinated as a condition of her employment. (Compl. ¶ 79.) It further alleges she accepted leave as her accommodation following the interactive process called for under GCCCD's Accommodation Framework. (*Id.*) And even though the Complaint was filed *after* George tendered her retirement, it does not contain a single allegation suggesting she was threatened with termination or that she was forced to retire from her position.

Nor do Plaintiffs proffer or point to any evidence disputing the Gallagher Declaration and George's Notice of Retirement presented by Defendants, which, taken together, demonstrate George voluntarily resigned. (*See* Gallagher Decl. ¶ 9 ("In February

- 18 -

2022, George voluntarily submitted her retirement notice[.]"); Notice of Retirement (checking box labeled "Retirement").)   All Plaintiffs offer is a statement in their Opposition that GCCCD's "vaccine, testing, and masking mandates . . . led to [George's] forced retirement." (Opp'n at 7:12.) But statements made in briefs neither constitute well-plead allegations entitled to the presumption of truth nor admissible evidence that rebuts a factual challenge. *Foster v. Essex Prop. Trust, Inc.*, No. 5:14-cv-05531, 2015 WL 7566811, at *2 (N.D. Cal. Nov. 25, 2015) (opining reliance on statements in an opposition brief does not suffice to contest evidence offered in support of factual challenge to jurisdiction); *Figy v. Frito-Lay N. Am., Inc.*, 67 F. Supp. 3d 1075, 1085–86 (N.D. Cal. 2014) (opining that plaintiff's obligation in response to a factual challenge is to present affidavits or other evidence to support subject matter jurisdiction).

Put simply, in light of George's retirement, it would be inconsequential for this Court to issue the relief she actually seeks in the underlying action:   an injunction invalidating GCCCD's Vaccine Requirement and a declaratory judgment deeming the Requirement unlawful.  As a retired GCCCD employee she is no longer subject to that policy and she, therefore, no longer has a legally cognizable interest in whether that policy stands or falls. *Powell*, 395 U.S. at 496; c*f. Klaasen v. Trs. of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (holding a student's claims were mooted when he permanently withdrew from the university against which he had sought an injunction of its vaccine mandate).

Accordingly, the Court **GRANTS** Defendants' motion to dismiss George's claims as moot.  However, the Court **GRANTS** George leave to file an amended pleading that cures this deficiency by stating a claim that entitles her to prospective relief.

### ii.   Mary Kate Planeta

Defendants aver SDCCD's decision to lift its Vaccine Requirement for students mooted Planeta's claims.  Defendants proffer a declaration from Gregory Smith, SDCCD's Vice Chancellor of Human Resources, in which he attests "SDCCD is removing the vaccination requirements for students" and "students will not be required to be vaccinated to participate in in-person instruction" for the 2022-23 academic year.  (Smith Decl. ¶ 4(b).)

- 19 -

Plaintiffs do not dispute the truth of these statements.  Rather, they argue SDCCD's removal of its Vaccine Requirement for students does not render Planeta's claims moot as a legal matter because the "voluntary cessation" exception to the mootness doctrine applies. (Opp'n at 8:14-28.)[18]

Even when a claim becomes moot due to subsequent events after the commencement of a lawsuit, "the flexible character of Art[icle] III mootness doctrine" may warrant the exercise of jurisdiction over the claim.  *States Parole Comm'n v. Geraghty*, 445 U.S. 388, 401 (1980).  "A party 'cannot automatically moot a case simply by ending its unlawful conduct once sued' else it 'could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends.'"  *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)).  For this reason, "voluntary cessation . . . does not ordinarily render a case moot[.]"  *Rosebrock v. Mathis*, 745 F.3d 963, 971 (citation and quotations omitted).

"Although [courts] presume that a government entity is acting in good faith when it changes its policy," the presumption is rebuttable, and "the government entity still must meet its heavy burden of proof" to demonstrate its voluntary cessation yields mootness. *Bell v. City of Boise*, 709 F.3d 890, 898–99 & n.13 (9th Cir. 2013); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (describing evidentiary standard governing whether voluntary cessation yields mootness as a "stringent" one).  Voluntary cessation moots a case only if "(1) there is no reasonable expectation that the wrong will be repeated, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation."  *Barnes v. Healy*, 980 F.2d 572, 580 (1992); *see Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010) ("[A] defendant claiming that its voluntary [cessation] moots a case bears the

---

[18] Plaintiffs also invoke the "wrongs capable of repetition but evading review" exception.  (Opp'n at 8:14-28.)  However, because Plaintiffs adequately invoke the "voluntary cessation" exception, the Court need not address whether this second exception applies.

formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." (quoting *Friends of the Earth,* 528 U.S. at 190)); *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

In their briefs, Defendants brush off the notion SDCCD will impose a Vaccine Requirement upon its students again because, according to Defendants, the COVID-19 pandemic is "waning." (Reply 5:21.) Hence, given the direction of the pandemic, Defendants aver there is no reasonable basis for this Court to infer SDCCD will revert to more restrictive, compulsory COVID-19 mitigation measures than are presently in effect, which would include reinstituting the Vaccine Requirement for students. (*Id.* at 5:21-26.) But SDCCD sang a different tune at oral argument when it disclosed that, at the beginning of the 2022-23 school year, Lama and Meza's initial accommodations had been revoked and replaced with much more restrictive ones. Specifically, SDCCD represented that although Lama previously had been granted an accommodation allowing him to perform all his duties remotely during the Spring 2022 semester (Smith Decl. ¶¶ 5, 8), he was forced to go on leave for the 2022-23 school year. And Meza, who SDCCD previously accommodated by allowing her to work onsite, subject to masking and testing requirements (*Id.* ¶ 8), similarly was forced to go on leave for the 2022-23 school year because it purportedly would be impossible for her to undertake adequate social-distancing measures while performing the job duties for the position to which she had been recently promoted. SDCCD further represented that if Lama and Meza do not get vaccinated, they may face termination.

SDCCD's representations at oral argument preclude the Court from finding it unreasonable to expect SDCCD will reinstitute its Vaccine Requirement for students. "A voluntary change in official stance or behavior moots an action only when it is absolutely clear to the court, considering the procedural safeguards insulating the new state of affairs from arbitrary reversal and the government's rationale for its changed practices, that the activity complained of will not reoccur." *Fikre v. FBI*, 904 F.3d 1033, 1039 (9th Cir. 2018). Despite Defendants assertion about the direction of the pandemic, SDCCD is the only CCD

to tighten its COVID-19 preventative measures for unvaccinated staff and to threaten employees who qualified for religious exemptions to its Mandate with termination for failure to submit to compulsory vaccination.  Defendants do not provide any explanation from which this Court could infer SDCCD will not in the near future also ratchet up its COVID-19 mitigation measures for students just as it did for employees, like Lama and Meza.  And the record further shows Planeta remains a SDCCD student.  Thus, no "interim relief or events have completely and irrevocably eradicated" the potential injuries that would befall Planeta were SDCCD to reinstitute its allegedly unlawful Vaccine Requirement.  *Barnes*, 980 F.2d at 580.  The Court, therefore, finds Defendants fail to satisfy their heavy burden of demonstrating voluntary cessation of SDCCD's Vaccine Requirement moots Planeta's claims.[19]

### 2.      Eleventh Amendment Immunity

The Eleventh Amendment provides:  "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  Put differently, the Eleventh Amendment bars federal jurisdiction over suits by individuals against a State and its instrumentalities, unless either the State consents to waive its sovereign immunity or Congress abrogates it. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984).

Here, the parties do not dispute the Entity Defendants "are [S]tate entities that possess Eleventh Amendment immunity from Section 1983 claims in damages and for injunctive relief."  (Opp'n at 16:7-9 (citing *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988).)  Nor do Plaintiffs argue the Entity Defendants have consented to being sued.  Nevertheless, Plaintiffs argue this Court can retain jurisdiction over their section 1983 claims—Counts I through VI—against the CCDs and their governing boards

---

[19] To be clear, the determination that Planeta's claims fit within the ambit of the "voluntary cessation" doctrine does not bear upon the ultimate merit of her challenges to SDCCD's Vaccine Requirement.

under the doctrine established by *Ex parte Young*, 209 U.S. 123 (1908).  (Opp'n 10 at 14:11–15 ("There is an exception to this general rule, however, that an official-capacity suit is not barred by the Eleventh Amendment when the suit is brought for prospective injunctive relief." (citing *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997))).)

Under *Ex parte Young*, Eleventh Amendment immunity "is subject to an exception for 'actions for prospective declaratory or injunctive relief against state *officers* in their official capacities for their alleged violations of federal law' so long as the state *officer* has 'some connection with enforcement of the act.'"  *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022) (emphasis added) (quoting *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012)).  However, as Defendants correctly argue, suits even for prospective declaratory or injunctive relief against State *entities* like the CCDs and their governing boards do not fall within the *Ex parte Young* exception to sovereign immunity.  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (noting plaintiff had viable claim under *Ex Parte Young* doctrine against members of State entity in their official capacities, but claim against State entity was barred by the Eleventh Amendment).  Indeed, "[t]he [*Ex parte*] *Young* doctrine is premised on the fiction that" a suit against a State official "is not an action against a 'State' and is therefore not subject to the sovereign immunity bar."  *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000).  However, the Ninth Circuit has explicitly held that fiction does not extend to State *agencies* and *instrumentalities*.  *Ariz. Students' Ass'n*, 824 F.3d at 865;  *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) ("The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies.").  Such State agencies and instrumentalities include CCDs like SDCCD, SOCCCD, and GCCCD, *see Mitchell*, 861 F.2d at 201–02 (finding "California cases demonstrate that California state colleges and universities are 'dependent instrumentalities of the [S]tate," and holding CCDs are "state entit[ies] that possess [E]leventh Amendment Immunity"), and, by logical extension, their

governing boards, *see Grosz v. Lassen Cmty. Coll. Dist.*, 360 F. App'x 795, 798 (9th Cir. 2009) (affirming dismissal of § 1983 claims against CCD and its Board of Trustees on Eleventh Amendment grounds).

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Counts I through VI against the Entity Defendants for lack of subject matter jurisdiction.  Because the Eleventh Amendment is an absolute bar to Plaintiffs' constitutional claims under section 1983 against the Entity Defendants, they are **DISMISSED WITH PREJUDICE** from this action.

### C.    Sufficiency of Allegations

#### 1.    Count VIII

Count VIII of the Complaint asserts a claim for "deprivation of civil rights under color of law" pursuant to 42 U.S.C. § 1983.  (Compl. ¶¶ 309–322.)  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Hence, "[Section] 1983 does not provide a standalone basis for relief in the absence of a violation of [p]laintiff's constitutional or federal statutory rights." *Egli v. Strimel*, 251 F. Supp. 3d 827, 840 (E.D. Pa. 2017); *see, e.g.*, *Nat'l Ass'n for Advancement of Multijurisdiction Practice v. Berch*, 973 F. Supp. 2d 1082, 1117 (D. Ariz. 2013) (disposing of claim alleging "independent violation" of § 1983); *Levanti v. Tippen*, 585 F. Supp. 499, 503–04 (S.D. Cal. 1984) (similar).

Count VIII is simply a claim for violation of 42 U.S.C. § 1983.  It is untethered from any substantive, federal right.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Count VIII.

#### 2.    Federal Rule of Civil Procedure 8(a)(2)

In their Memorandum, Defendants principally argue Plaintiffs fail to allege any constitutional or statutory violations that are "plausible" on their face.  While anchoring their Rule 12(b)(6) Motion in terms of plausibility is understandable in light of *Twombly*

22cv0424

and *Iqbal*, by doing so Defendants overlook more rudimentary Rule 8(a)(2) defects in the Complaint, each of which independently warrants dismissal.

Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claims showing that the pleader is entitled to relief." The primary purpose of Rule 8(a)(2) is to ensure the pleading "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). For approximately fifty years, the Supreme Court recognized a liberal pleading system enshrining this purpose: the notice-pleading standard. All *Conley v. Gibson* required of a plaintiff to comply with Rule 8(a)(2) and, thus, to defeat a Rule 12(b)(6) challenge, was "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. 355 U.S. 41, 45 (1957) (quoting Fed. R. Civ. P. 8(a)(2)).

But in *Twombly* and *Iqbal*, the Supreme Court diverged from its uniform application of *Conley*'s notice pleading, opting instead for a heightened standard: plausibility. *See supra* Sec. II.B. In *Twombly*, the Supreme Court "adopted the 'plausibility' standard in an antitrust case, expressing its concern, specifically in the antitrust context, that liberal pleading rules, combined with expansive discovery, would pressure defendants to settle weak or meritless cases." Alexander A. Reinert, *Pleading As Information-Forcing*, 75 Law & Contemp. Probs. 1, 6 (2012). Importantly, "*Twombly* suggested that the 'plausibility' of a plaintiff's complaint played a role in considering whether a defendant's Rule 12(b)(6) motion should be granted." *Id.*

*Iqbal* added much-needed clarity to *Twombly*: it resolved that *Twombly*'s "plausibility" requirement "applie[s] in all civil cases, not just [to] antitrust claims," and effectively overruled *Conley*. *See Pleading As Information-Forcing*, 75 Law & Contemp. Probs. at 6. Moreover, *Iqbal* established a two-step process for evaluating the sufficiency of a complaint under Rule 12(b)(6). *Id.* *Iqbal* instructed courts to first exclude from consideration conclusory allegations in a complaint and then, accepting as true all factual

22cv0424

allegations, assess whether the non-conclusory facts plausibly state a basis for entitlement to the relief claimed. *Id.*

Still, as the Ninth Circuit observed in *Starr v. Baca*, two Supreme Court precedents decided during roughly the same period as *Twombly* and *Iqbal* rendered uncertain whether a complaint's failure to comply with Rule 8(a)(2)'s primary purpose—to provide fair notice to a defendant of the nature of the claims lodged against it and to enable defendant to respond intelligibly—warrants dismissal independent of the merits of its claims. 652 F.3d 1202, 1214–16 (9th Cir. 2011). In *Swierkiewicz v. Sorema N.A.*, decided approximately three years prior to *Twombly* and *Iqbal*, the Supreme Court held that "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." 534 U.S. 506, 514–15 (2002). Moreover, in *Erickson v. Pardus*, 551 U.S. 89 (2007), decided between *Twombly* and *Iqbal*, the Supreme Court appeared to endorse the fair-notice pleading standard when it held that a "prisoner alleging deliberate indifference had satisfied pleading standards, despite the presence of conclusory allegations of harm." Alexander A. Reinert, *The Supreme Court's Civil Assault on Civil Procedure*, 41-JUL Hum. Rts. 11, 13.

To harmonize *Twombly* and *Iqbal*, on the one hand, and *Swierkiewicz* and *Erickson*, on the other hand, the Ninth Circuit explained there exist "two principles common to all of them." *Starr*, 652 F.3d at 1216.

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.* at 1216; *accord Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

22cv0424

1       *Starr* essentially stands for the proposition that, in the Ninth Circuit, "[f]ailure to
2   comply with [Rule 8(a)(2)'s fair-notice requirement] constitutes an independent basis for
3   dismissal of a complaint even if the claims in a complaint are not found to be wholly
4   without merit." *Woulldar v. Contreras*, No. CV 17-08298-R-JDE, 2017 WL 6343549, at
5   *2 (C.D. Cal. Dec. 11, 2017) (citing *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir.
6   1996)); *Purugganan v. Dep't of Public Safety*, Civ. No. 20-00225 HG-RT, 2020 WL
7   3052203, at **2–3 (D. Haw. June 8, 2020) (dismissing complaint because it did not surpass
8   "minimum threshold" of providing defendant with "notice of what it is that it allegedly did
9   wrong" (quoting *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995))); *Shadd v.
10  Cty. of Sacramento*, No. 2:12-cv-002834 MCE KJN, 2013 WL 456147, at *3 (E.D. Cal.
11  Aug. 23, 2013) (dismissing complaint because it "did not include sufficient allegations of
12  underlying facts to give fair notice and to enable the opposing party to defend itself
13  effectively" (quoting *Starr*, 652 F.3d at 1216)); *see also Whitaker v. Body, Art & Soul
14  Tattoos L.A., LLC*, 840 F. App'x 959, 961 (9th Cir. 2021) (affirming dismissal of complaint
15  for failing to provide defendant with fair notice); *Little v. Washington*, 517 F. App'x 552,
16  552 (9th Cir. 2013) (similar).  Indeed, *Starr* itself makes clear that district courts need not
17  proceed to the plausibility analysis on a Rule 12(b)(6) motion where the complaint's
18  allegations fail to comply with the basic Rule 8(a)(2) requirement of fair notice.  *Starr*, 652
19  F.3d at 1216 ("[T]o be entitled to the presumption of truth, allegations in a complaint . . .
20  must contain sufficient allegations of underlying facts to give fair notice and to enable the
21  opposing party to defend itself effectively.").

22      Thus, to survive Rule 8(a)(2), a complaint must provide "'fair notice of what
23  plaintiff's claim is and the grounds upon which it rests' in order to enable the [defendant]
24  to answer and prepare for trial, and to identify the nature of the case." *Middleton v. United
25  States*, No. 10-CV-6057 (HFB)(ETB), 2012 WL 394559, at *2 (E.D.N.Y. Feb. 7, 2012)
26  (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)); *Starr*, 652 F.3d at 1216.

27      Several forms of pleading practices can preclude a defendant of fair notice and, thus,
28  warrant dismissal under Rule 8(a)(2).  One such practice is "shotgun pleading," in which

- 27 -

the instant Complaint engages prolifically.  As the Eleventh Circuit explained in *Weiland v. Palm Beach County. Sheriff's Office*, there are four common types of shotgun pleading:

> The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each adopts the allegations of all the preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type . . . is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is a relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

792 F.3d 1313, 1321–23 (11th Cir. 2015).

"[S]hotgun pleadings generally do not provide fair notice." *Beco Dairy Automation, Inc. v. Global Tech Sys., Inc.*, No. 1:12-cv-01310 LJO SMS, 2015 WL 5732595, at *11 (E.D. Cal. Sept. 28, 2015) (citing *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 3d 1046, 1049 (N.D. Cal. 2004)).  That is because shotgun pleadings "overwhelm defendants with an unclear mass of allegations and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-766 AG (ANx), 2010 WL 2674456, at *1 (C.D. Cal. June 30, 2010).  Put differently, a plaintiff who engages in shotgun pleading abdicates its duty under Rule 8(a)(2) to provide a "short and plain statement of the claims showing that the pleader is entitled to relief," and leaves it to the defendant (and the court) to piece together the allegations and claims—as though they comprise a puzzle to be solved—in order to discern the nature and factual basis of the claim of which defendant stands accused.

Here, the Complaint employs all four types of shotgun pleading, each of which independently dooms Counts I through VII.

22cv0424

First, each of Counts I through VII "incorporate by reference" the 218-paragraph, 54-page long Statement of Facts section of the Complaint.  By doing so, each Count incorporates large swaths of information in the Statement of Facts that does not bear at all upon the merits of the underlying claim.  This type of shotgun pleading deprives Defendants from knowing the factual bases of each of the causes of actions lodged against them, particularly considering the sheer volume of the Statement of Facts incorporated by reference in Counts I through VII.  *Autobidmaster, LLC v. Alpine Auto Gallery, LLC*, No. 3:14-cv-1083-AC, 2015 WL 2381611, at \*15 (D. Or. May 19, 2015) (holding pleading "[r]uns afoul of [Rule 8] because it is a 'shotgun' pleading which incorporates by reference every preceding paragraph regardless of relevancy") (internal quotation marks omitted); *S.E.C. v. Fraser*, No. CV-09-00443-PHX-GMS, 2010 WL 5776401, at \*9 (D. Ariz. Jan. 28, 2010) (noting that while incorporating by reference preceding paragraphs does not automatically warrant dismissal under Rule 8(a)(2), it does where the incorporation covers a substantial amount of factual material and the pleading "make[s] no attempt to lay out which conduct constitutes the violation alleged").

Second, the Complaint is replete with "immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F.3d at 1321–23.  In particular, the Complaint contains tens of pages of allegations about the CCDs' purported lack of authority under California law to implement their Vaccine Requirements (Compl. ¶¶ 141–47, 152–58); the Supreme Court's decision in *National Federation of Independent Business v. OSHA*, 142 S. Ct. 661 (2022) ("*NFIB*"), which holds that the Occupational Safety and Health Administration ("OSHA") lacks authority under the Occupational Safety and Health Act to implement compulsory vaccination (*id.* ¶¶ 148–51); and the CCDs' purported financial interest in implementing COVID-19 mitigation measures "overzealously" (*id.* ¶¶ 159–75).  Plaintiffs make no effort to connect any of these allegations with any one of their separately enumerated claims.

Nor can they.  To the extent Plaintiffs allege the CCDs lack authority under California law to institute their Vaccine Requirements, there does not exist a cognizable

claim pursuant to 42 U.S.C. § 1983 for violation of a State's police powers under the Constitution. *Forbes v. Cty. of San Diego*, No. 20-cv-0998-BAS-JLB, 2021 WL 843175, at *3 (S.D. Cal. Mar. 4, 2021) (citing *Bimber v. Delwood, Inc. v. James*, 496 F. Supp. 3d 760 (W.D.N.Y. 2020)). To the extent Plaintiffs argue *NFIB* prohibits the CCDs from requiring compulsory vaccination as a condition of employment, that case is inapposite. Plaintiffs appear to concede the CCDs' Vaccine Requirements were issued under California—not federal—law. (Compl. ¶¶ 152–54.) Thus, the Supreme Court's interpretation in *NFIB* of the outer boundaries of OSHA's authority under that Occupational Safety and Health Act to impose workplace-safety measures does not bear at all upon the CCDs' authority to issue vaccine mandates under California law. *NFIB*, 142 S. Ct. at 661. Hence, these allegations do not serve any permissible function; rather, they constitute yet another impediment to Defendants' fair notice by rendering the pleading disjointed.

Third, Counts I through VII impermissibly lump all Defendants together using the omnibus terms "CCDs" and "Defendants." (*See, e.g.*, Compl. ¶ 265 ("Defendants have instituted a Vaccine Mandate [that violates the Free Exercise Clause].").) Group pleading generally is violative of Rule 8(a)(2) because it deprives each Defendant from discerning what it, specifically, did wrong. *Sollberger*, 2010 WL 2674456, at *4; *Clark v. Mayfield*, 74 A.F.T.R.2d 94-7323 (S.D. Cal. Nov. 21, 1994) ("[F]ederal courts repeatedly have required a plaintiff suing multiple defendants to set forth sufficient facts to lay a foundation for recovery against each particular defendant named in the suit." (citing *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981))). Here, Plaintiffs' group pleading ignores that there is no singular CCD Vaccine Requirement but three: each CCD has implemented its own independent and separate COVID-19 mitigation measures, including its own Mandates and Accommodation Frameworks. Hence, each CCD is deprived of fair notice why its respective Vaccine Requirement violates the Constitution and Title VII.

The Complaint's use of group pleading also raises the specter of another Rule 8(a)(2) problem. Each Plaintiff asserts claims against not only the institution with which he or she

is associated but also against the other two CCDs with which he or she has no affiliation. For example, Bonkowski is a SOCCCD employee, yet he asserts claims against all Defendants, including high-ranking officials and elected-board members at GCCCD and SDCCD, despite the fact he is not subject to any of those institutions Vaccine Requirements. But a Plaintiff cannot maintain Counts I through VII against Defendants at other CCDs on the ground that those institutions all are part of the California Community College system. *Cf. In re Aluminum Warehousing Antitrust Lit.*, No. 13-md-2481 (KBF), 2015 WL 1344429, at *3 (S.D.N.Y. Mar. 23, 2015) ("The fact that two separate legal entities may have . . . [an] affiliation does not later Rule [8's] pleading requirement."); *see also United States ex rel. Takemoto v. The Hartford Fin. Servs. Grp., Inc.*, 157 F. Supp. 3d 273, 281 (W.D.N.Y. 2016), *aff'd sub nom. United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92 (2d Cir. 2017). Plaintiffs' use of shotgun pleading to lump Defendants together thus warrants dismissal of Counts I through VII on two bases.

Finally, but perhaps most problematically, the Complaint fails to "separate[e] into a different count each cause of action or claim for relief." *Weiland*, 792 F.3d at 1323. It does so by failing to distinguish in several critical Counts—namely those concerning Plaintiffs' sincerely-held religious beliefs, *i.e.*, Counts IV and VII—whether the claim is directed at the Mandates, the Accommodation Frameworks, or both. Rather, Plaintiffs lump together the various CCD policy components. (*See*, *e.g.*, Compl. ¶¶ 265, 300.)

Plaintiffs' claim brought under the Free Exercise Clause at Count IV is a useful illustration in this regard. As a prerequisite to mounting a free exercise claim against a challenged policy, a plaintiff must allege (1) his or her "proffered belief [is] sincerely held" and (2) "the claim [is] rooted in religious belief, not in purely secular philosophical concerns." *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). The pleading indicates that Plaintiffs object to *vaccination* on religious grounds; specifically, they appear to object to taking a vaccine purportedly developed using "abortion-derived" fetal cells.[20] From this

---

[20] The Complaint itself does not allege the specific bases of Plaintiffs' religious objection to the COVID-19 vaccination, but materials annexed to the Complaint do. (*See* George Exemption Request ("I

information, the Court inferred in its P.I. Denial that Plaintiffs' free exercise claim is directed only at the CCDs' Mandates, despite a passing and conclusory reference in Count IV to Plaintiffs' religious objection to antigen testing.  (*See* Compl. ¶ 274 ("[Plaintiffs'] sincerely held religious belief compels them to abstain from receiving any of the currently available COVID-19 vaccines *and tests*.").)  Indeed, read in full, Count IV seems to allege not that testing violates any sincerely-held religious belief of any Plaintiff but rather constitutes an onerous, "retaliatory action designed to coerce Plaintiffs into going against their religious beliefs and become vaccinated."  (*Id.* ¶ 266.)

However, at oral argument, Plaintiffs clarified that they do, in fact, hold sincerely-held religious beliefs that compel them to abstain from antigen testing and that they had intended Count IV to comprise a free exercise challenge against not only compulsory vaccination but also any accommodation decision that requires Plaintiffs to submit to testing.  Yet the way in which Count IV is pleaded deprives Defendants (and this Court) of fair notice of this theory of Plaintiffs' free exercise claim.  Plaintiffs simply bootstrap their apparent challenge to the Accommodation Frameworks to their challenge against the Mandates.  This Plaintiffs cannot do.  These challenges are directed at separate components of the CCDs' Vaccine Requirements, which developing precedent makes clear must be analyzed separately.  *See Kane v. De Blasio*, 19 F.4th 152, 164 (2d Cir. 2021) (upholding vaccine mandate under rational basis review but enjoining accommodations procedures under strict scrutiny in Free Exercise Clause challenge to New York City school employee COVID-19 vaccine order); *Does 1-6 v. Mills*, 16 F.4th 20, 29–35 (1st Cir. 2021) (upholding vaccine mandate for Maine healthcare workers under rational basis review); *cf. Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *3 (E.D. Wash. Oct. 25, 2021)

believe receiving any COVID-19 vaccine would be participating in the sin of abortion[.]"), Ex. J to Compl.; Lama Request for Reconsideration ("Accepting to take these specific available vaccines that have been in one way or another been [sic] developed and/or produced with the unholy use of aborted children's cell lines goes deeply against my belief of honoring, praising and obeying God[.]"), Ex. O to Compl.; Planeta Email ("Taking a vaccine developed using abortion-derived cells, goes against my belief system."), Ex. OO to Compl.)

22cv0424

(holding disagreement with "the availability of accommodations" did not affect analysis of constitutionality of vaccine mandate).

Moreover, Plaintiffs' Free Exercise Clause challenges to the Mandates and the Accommodation Frameworks inevitably will rely upon distinct sets of factual allegations and theories. That is, the latter must be predicated upon Plaintiffs' religious objections to receiving the COVID-19 vaccines, while the former must be predicated upon Plaintiffs' religious objections to antigen testing, face-mask compliance, or another form of accommodation administered by the CCDs. For this reason, too, it is essential for Plaintiffs' Free Exercise Clause challenges to be pleaded separately and distinctly in order to provide Defendants with fair notice. *Cf. Burke v. Custom Marine Grp.*, 847 F. App'x 578, 581 (11th Cir. 2021) (affirming dismissal on Rule 8 grounds where complaint packed within a single count "distinct theories of liability that involve different facts and should be asserted independently" (citing *Weiland*, 792 F.3d at 1322)); *Metzler v. Ball*, No. 1:18-cv-02058-DDD-GPG, 2019 WL 3767054, at *3 (D. Colo. Aug. 9, 2019) (dismissing on Rule 8 grounds "'a shotgun complaint,' . . . which . . . combine[d] multiple theories of relief into a single claim." (citing *D.R. Horton, Inc. v. Curb N., Inc.*, No. 07-cv-709, 2008 WL 11409168, at *2 (D.N.M. Sept. 22, 2008)).

Accordingly, dismissal of Counts I through VII is warranted under Rule 8(a)(2).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants Motion to Dismiss. Dismissal is **WITH PREJUDICE** as to: (1) all Counts against Student Defendants; (2) Counts I through VI against Entity Defendants; and (3) Count VIII. Dismissal is **WITHOUT PREJUDICE** as to all remaining claims against all remaining Defendants. The Court **GRANTS** Plaintiffs leave to file an amended complaint, which Plaintiffs must file **by no later than December 23, 2022**.

**IT IS SO ORDERED.**

**DATED: November 29, 2022**

Hon. Cynthia Bashant
United States District Judge

22cv0424