# EXHIBIT 4
# PLAINTIFF FIRST SET OF INTERROGATORIES

DORA MEZA, Pro Se
25671 Hallmark Circle
Homeland, CA. 92548
Cell: 619-414-0535
Dora.Meza@att.net

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY GEORGE, ET AL,<br>PLAINTIFFS,<br><br>vs.<br><br>GROSSMONT CUYAMACA COMMUNITY COLLEGE DISTRICT GOVERNING BOARD, ET AL,<br>DEFENDANTS. | CASE NO.: 3:22-CV-424-L-A GS-DDL<br>DEPT.: 5B<br>JUDGE ANDREW G. SCHOPLER<br>MAGISTRATE: JUDGE DAVID D. LESHNER<br><br>**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT SAN DIEGO COMMUNITY COLLEGE DISTRICT** |

PROPOUNDING PARTY: DORA MEZA,

Plaintiff

RESPONDING PARTY: SAN DIEGO COMMUNITY COLLEGE DISTRICT,

Defendant

SET: ONE

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Dora Meza hereby propounds the following Interrogatories to Defendant San Diego Community College District (SDCCD), to be answered fully, under oath, within 30 days of service.

///

1

## PRELIMINARY STATEMENT

The following directions, guidelines, and definitions are to be considered applicable to all questions contained in this set of written interrogatories unless made expressly inapplicable by the context of the particular question.

In answering these interrogatories, furnish all information which is available to you, including all information in the possession of your attorneys, or investigators for your attorneys, or anyone employed on your behalf, and not merely such information known of your own personal knowledge.

If you cannot fully answer each interrogatory, including all subparts thereof, after exercising due diligence to secure the information to do so, so state, and answer to the extent possible, specifying your inability to answer the remainder, and stating whatever information or knowledge you have concerning the unanswered portions.

Each term or phrase used herein shall be considered to have its ordinary or common meaning, unless specifically defined below.

The singular number and the masculine gender as used herein shall be read and applied as the plural, the feminine or neuter, as the circumstances of the particular question(s) may make appropriate.

2

# DEFINITIONS

As used in these interrogatories, the following terms shall have the meanings set forth below. These definitions apply to all interrogatories unless expressly limited by a particular question.

**1.** The Term **"Defendant" or "SDCCD"**

The term "Defendant" or "SDCCD" refers to San Diego Community College District, its elected board members, departments, divisions, administrators, employees, agents, representatives, officers, legal counsel, and any other persons acting or purporting to act on its behalf.

**2.** The Term **"Plaintiff"**

The term "Plaintiff" refers to Dora Meza, the individual bringing this action, as well as her attorneys, agents, and representatives.

**2.** The Term **"COVID-19 Protocols"**

The term "COVID-19 Protocols" refers to any policies, mandates, guidelines, restrictions, directives, accommodations, exemptions, disciplinary actions, or workplace measures implemented by SDCCD related to COVID-19, including but not limited to vaccination requirements, religious or medical exemption policies, testing, masking, social distancing, and administrative leave decisions.

### 4. The Term "Religious Exemption"

The term "Religious Exemption" refers to any request, application, or accommodation sought by Plaintiff or any other SDCCD employee or student on the basis of a sincerely held religious belief that precluded them from complying with SDCCD's COVID-19 vaccination requirements. This includes any denial, approval, conditional approval, revocation, modification, or appeal of such exemptions.

### 5. The Term "Medical Exemption"

The term "Medical Exemption" refers to any request, application, or accommodation sought by Plaintiff or any other SDCCD employee or student on the basis of a medical condition, disability, or physician recommendation that precluded them from complying with SDCCD's COVID-19 vaccination requirements.

### 6. The Term "Administrative Leave"

The term "Administrative Leave" refers to any period of time during which an SDCCD employee was prohibited from performing their job duties, restricted from the workplace, participating in on-site as well as remote work connected activities, or placed on leave (paid or unpaid) due to their exemption status, vaccination status, or COVID-19 protocol compliance.

4

7. The Term **"Accommodation"**

The term "Accommodation" refers to any action taken by SDCCD to allow an employee to continue working despite their religious or medical exemption, including but not limited to remote work options, masking requirements, testing requirements, or job reassignments.

8. The Term **"Disparate Treatment"**

The term "Disparate Treatment" refers to any action, decision, policy, or practice in which SDCCD treated religious exemption holders less favorably than similarly situated employees or student with medical exemptions or vaccinated employees.

9. The Term **"Undue Hardship"**

The term "Undue Hardship" refers to the legal standard under Title VII of the Civil Rights Act of 1964, which permits an employer to deny a religious accommodation only if it can demonstrate that the accommodation would impose a substantial burden in the overall context of its business operations. As clarified in Groff v. DeJoy, 600 U.S. 447 (2023), an employer must prove that the accommodation would result in substantial increased costs or burdens that would materially affect the conduct of its business. Mere inconvenience, speculative harm, or minor administrative costs do not constitute undue hardship under this standard.

10. The Term **"Internal Communications"**

The term "Internal Communications" refers to any emails, text messages, memos, meeting notes, policy discussions, reports, or other written or electronic communications among SDCCD personnel regarding COVID-19 protocols, religious exemptions, medical exemptions, workplace safety, or administrative leave decisions.

11. The Term **"Relevant Time Period"**

The term "Relevant Time Period" refers to the timeframe beginning May 1, 2021, and continuing through the present, covering the period when SDCCD implemented COVID-19 protocols, evaluated exemption requests, excluded employees and students from on-site activities, placed employees on administrative leave, and made related policy decisions.

12. The Term **"Identify" or "State the Identity of"**

The terms "Identify" or "State the Identity of" mean:

a) For persons: Provide their full name, job title, employer, last known address, telephone number, and email address.

b) For documents: Provide the document's title, date, author(s), recipient(s), format (email, memorandum, etc.), and location or custodian.

c) For policies or decisions: Provide the name, date of implementation, responsible parties, and description of the policy or decision.

13. The Term **"Document" or "Documents"**

The term "Document" or "Documents" refers to any tangible record, written or electronic, including but not limited to emails, memos, text messages, handwritten notes, meeting minutes, reports, policies, spreadsheets, audio recordings, video recordings, databases, or any other form of recorded information.

14. The Term **"Policy" or "Practice"**

The term "Policy" or "Practice" refers to any rule, regulation, directive, custom, or standard operating procedure implemented by SDCCD, whether formally written or informally enforced.

15. The Term **"Reasonable Inquiry"**

The term "Reasonable Inquiry" refers to Defendant's obligation under Federal Rule of Civil Procedure 33(b)(1)(B) to investigate all sources of available information before responding to these interrogatories, including consulting records, databases, emails, and SDCCD personnel with knowledge of the subject matter.

**INTERROGATORY NO. 1:**

State all reasons why Plaintiff was placed on administrative leave on August 22, 2022, and describe in detail the specific factors that led to the decision, including but not limited to the role of Plaintiff's religious exemption in the determination.

**INTERROGATORY NO. 2:**

Identify all SDCCD personnel who were involved in the decision to place Plaintiff on administrative leave in August 2022, and state whether any of those individuals expressed concerns, objections, or alternative recommendations regarding Plaintiff's work status.

**INTERROGATORY NO. 3:**

Describe the process SDCCD followed to determine whether Plaintiff's continued presence at work after receiving a religious exemption would pose a risk to workplace safety, and state whether SDCCD conducted an "undue hardship" analysis as defined by the Supreme Court in Groff v. DeJoy, 600 U.S. 447 (2023).

**INTERROGATORY NO. 4:**

State whether SDCCD conducted any individualized assessment of Plaintiff's ability to safely perform her job after granting her religious exemption, and if so, describe the process, findings, and whether SDCCD determined that

8

accommodating Plaintiff would impose a "substantial increased cost" on its operations as required by Groff v. DeJoy, 600 U.S. 447 (2023).

**INTERROGATORY NO. 5:**

Describe all considerations SDCCD took into account when deciding whether to allow Plaintiff to return to work before March 6, 2023, and whether SDCCD determined that doing so would create an "undue hardship" under the Groff v. DeJoy, 600 U.S. 447 (2023) standard.

**INTERROGATORY NO. 6:**

Identify all SDCCD employees or contractors who were granted religious exemptions from the COVID-19 vaccine mandate between 2021 and 2023, and state whether each individual was permitted to continue working on-site, was placed on leave, or was otherwise restricted.

**INTERROGATORY NO. 7:**

Identify all SDCCD employees or contractors who were granted medical exemptions from the COVID-19 vaccine mandate between 2021 and 2023, and state whether each individual was permitted to continue working on-site, was placed on leave, or was otherwise restricted.

**INTERROGATORY NO. 8:**

Describe all accommodations SDCCD provided to employees who received medical exemptions and compare those accommodations to those provided to employees who received religious exemptions. Additionally, state whether SDCCD determined that providing religious accommodations, but not medical accommodations, would impose a "substantial increased cost" as required under Groff v. DeJoy, 600 U.S. 447 (2023).

**INTERROGATORY NO. 9:**

Identify any SDCCD employees with medical exemptions who were allowed to work on-site but did not comply with weekly testing, masking, or distancing policies, and state whether they faced disciplinary action.

**INTERROGATORY NO. 10:**

Describe any disciplinary action SDCCD took against vaccinated employees who tested positive for COVID-19 and compare it to the actions taken against unvaccinated employees with religious exemptions.

**INTERROGATORY NO. 11:**

State how many SDCCD employees tested positive for COVID-19 between May 1, 2021, and March 30, 2023, specifying how many were vaccinated and how many were unvaccinated.

**INTERROGATORY NO. 12:**

State whether SDCCD had a policy in place to track whether employees who tested positive for COVID-19 were vaccinated or unvaccinated and explain how such data was used in workplace safety determinations.

**INTERROGATORY NO. 13:**

Identify and describe any internal studies, reports, or data analyses SDCCD conducted or reviewed between 2021 and 2023 comparing COVID-19 transmission rates among vaccinated and unvaccinated employees, and state whether SDCCD relied on these studies to justify claims of "undue hardship" in denying religious accommodations under the Groff v. DeJoy, 600 U.S. 447 (2023) standard.

**INTERROGATORY NO. 14:**

Identify all SDCCD employees who were disciplined, placed on leave, or terminated for non-compliance with COVID-19 policies, specifying whether they sought a religious exemption, a medical exemption, or did not seek an exemption.

**INTERROGATORY NO. 15:**

Identify all meetings, emails, memoranda, or policy discussions in which SDCCD personnel discussed the relative COVID-19 risks of vaccinated vs. unvaccinated employees, and state whether religious exemption holders were specifically addressed.

11

**INTERROGATORY NO. 16:**

Identify all communications between SDCCD Human Resources personnel, administrators, and legal counsel discussing Plaintiff's religious exemption, administrative leave, or return-to-work status. Additionally, state whether any of these communications reference "undue hardship" as defined in Groff v. DeJoy, 600 U.S. 447 (2023).

**INTERROGATORY NO. 17:**

For each of SDCCD responses to the Requests for Admission, Set One (served on January 29, 2025) which is not an unqualified admission, state (a) the number of the Request, (b) all facts on which SDCCD base THEIR response, (c) the names, addresses, and telephone numbers of all persons who have knowledge of those facts, and (d) identify all documents that support SDCCD response.

**INTERROGATORY NO. 18**:

State whether SDCCD considered revising its workplace restrictions based on its own data showing a higher number of COVID-19 cases among vaccinated employees, and if not, explain why.

**INTERROGATORY NO. 19:**

Describe all workplace restrictions that were in place for vaccinated employees who tested positive for COVID-19 and whether those same restrictions were applied to unvaccinated employees with religious exemptions.

**INTERROGATORY NO. 20:**

Identify any vaccinated SDCCD employees who tested positive for COVID-19 and were permitted to continue working remotely, and state whether similar accommodations were offered to unvaccinated employees with religious exemptions.

Dated February 7, 2025.

_____
DORA MEZA, Pro Se